1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  LILY A. KORMAN, State Bar No. 242688
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone: (415) 703-5507
     Fax:  (415) 703-5843
8    Email: Lily.Korman@doj.ca.gov

9  Attorneys for Defendants A. Tucker, B. Curry, V.
   Khan, D. N. McCall, A. E. Roberts, and P. Barker

10

11

12                IN THE UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15  **JAMES G. GARCIA,**                       |  C 07-6262 CRB (PR)

16                              Plaintiff,    |  **DEFENDANTS' NOTICE OF
                                              |  MOTION AND MOTION FOR
17        **v.**                              |  SUMMARY JUDGMENT**

18  **BEN CURRY, Warden, et al.,**

19                              Defendants.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | | 2 |
| Introduction | | 2 |
| Statement of the Issues | | 2 |
| Statement of the Case | | 3 |
| Statement of Undisputed Facts | | 3 |
| | A. The Parties | 3 |
| | B. Garcia violated prison rules by refusing to comply with direct orders to prone-out during an emergency | 4 |
| | C. Garcia was placed in administrative segregation pending the outcome of his staff-misconduct allegation against Sergeant Locke | 5 |
| | D. Sergeant Locke requested that Garcia be transferred to another California State Correctional Facility to avoid further intimidation by Garcia | 6 |
| SUMMARY-JUDGMENT STANDARD | | 7 |
| ARGUMENT | | 8 |
| I. THE UNDISPUTED EVIDENCE SHOWS THAT THE RETALIATION CLAIMS ARE UNFOUNDED AND BARRED AS A MATTER OF LAW | | 8 |
| | A. Garcia's placement in administrative segregation was necessary for the integrity of the investigation into his allegations of staff misconduct in accordance with California Code Regulations and not done for retaliatory purposes | 9 |
| | B. The rules-violation report for Garcia's refusal to prone-out advanced the legitimate penological purpose of institutional safety, and there is no evidence of retaliatory motive | 10 |
| | C. The informational chrono based on actions taken while Garcia was an elected MAC member was proper and did not violate Garcia's First Amendment rights | 11 |
| | D. Garcia's transfer to Ironwood Prison was for legitimate penological purposes and did not violate his First Amendment rights | 12 |
| | E. Garcia has not shown that Defendants' alleged actions chilled his protected activities or that he was harmed in any way | 13 |

**TABLE OF CONTENTS** (continued)

Page

II. DEFENDANTS ARE SHIELDED FROM ANY POTENTIAL DAMAGES LIABILITY BY THE DOCTRINE OF QUALIFIED IMMUNITY                                     14

CONCLUSION                                                    16

1

**TABLE OF AUTHORITIES**

2

**Page**

3 Cases

4 *Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)                                                      7, 8
5
*Burns v. Reed*
6 500 U.S. 478 (1991)                                                      15

7 *Celotex Corp. v. Catrett*
477 U.S. 317 (1986)                                                      7
8
*Crawford-El v. Britton*
9 520 U.S. 1273 (1997)                                                     14

10 *Crawford-El v. Britton*
93 F.3d 813 (D.C. Cir. 1996)                                             14
11
*Gomez v. Vernon*
12 255 F.3d 1118 (9th Cir. 2001)                                           14

13 *Harlow v. Fitzgerald*
457 U.S. 800 (1982)                                                      15
14
*Hartman v. Moore*
15 547 U.S. 250 (2006)                                                     9

16 *Hewitt v. Helms*
459 U.S. 460 (1983)                                                      9, 15
17
*Marquez v. Gutierrez*
18 322 F.3d 689 (9th Cir. 2005)                                            15

19 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986)                                                      8
20
*Pratt v. Rowland*
21 65 F.3d 802 (9th Cir. 1995)                                             8

22 *Procunier v. Martinez*
416 U.S. 396 (1974)                                                      9
23
*Resnick v. Hayes*
24 213 F.3d 443 (9th Cir. 2000)                                            14

25 *Rhodes v. Robinson*
408 F.3d 559 (9th Cir. 2005)                                             8, 13, 14
26
*Sandin v. Conner*
27 515 U.S. 472 (1995)                                                     8

28

Defs.' Not. Mot. & Mot. Summ. J.                    *J. G. Garcia v. B. Curry, et al.*
                                                     C 07-6262 CRB (PR)

iii

Page

*Saucier v. Katz*
533 U.S. 194 (2001)                                          15

*Schroeder v. McDonald*
55 F.2d 454 (9th Cir. 1995)                                  12

*Scott v. Harris*
127 S. Ct. 1769 (2007)                                        8

*Taylor v. List*
880 F.2d 1040 (9th Cir. 1989)                                10

**Constitutional Provisions**

First Amendment                                    3, 8, 9, 11-14

**Statutes**

United States Code, Title 28
        § 1915A                                               3

United States Code, Title 42
        § 1983                                             3, 10

**Court Rules**

Federal Rule of Civil Procedure
        rule 56                                               1
        rule 56(c)                                            7
        rule 56(e)                                            8

**Other Authorities**

California Code of Regulations, Title 15                       2
        § 2005(a)                                          5, 11
        § 3005(b)                                             5
        § 3315                                               5
        § 3335(a)                                          6, 9

Defs.' Not. Mot. & Mot. Summ. J.                    *J. G. Garcia v. B. Curry, et al.*
                                                   C 07-6262 CRB (PR)

iv

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DAVID S. CHANEY
    Chief Assistant Attorney General
3   ROCHELLE C. EAST
    Senior Assistant Attorney General
4   THOMAS S. PATTERSON
    Supervising Deputy Attorney General
5   LILY A. KORMAN, State Bar No. 242688
    Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA  94102-7004
7     Telephone: (415) 703-5507
      Fax:  (415) 703-5843
8     Email:  Lily.Korman@doj.ca.gov

9   Attorneys for Defendants A. Tucker, B. Curry, V.
    Khan, D. N. McCall, A. E. Roberts, and P. Barker

10

11

12                  IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15  | JAMES G. GARCIA,                          | C 07-6262 CRB (PR)
16  |                              Plaintiff,    | **DEFENDANTS' NOTICE OF
17  |          v.                                | MOTION AND MOTION FOR
                                                   SUMMARY JUDGMENT**
18  | BEN CURRY, Warden, et al.,                 |
19  |                              Defendants.   |

20

21  TO JAMES GARCIA, PLAINTIFF PRO SE:

22        PLEASE TAKE NOTICE that Defendants A. Tucker, B. Curry, V. Khan, D. N. McCall, A.

23  E. Roberts, and P. Barker (Defendants) move for summary judgment under Federal Rule of Civil

24  Procedure 56 because the undisputed facts in this case demonstrate that Defendants are entitled

25  to judgment as a matter of law and Defendants are entitled to qualified immunity.  The motion

26  for summary judgment is made on the grounds that the facts do not support claims of retaliation.

27        This motion is based on: the supporting declaration of L. Korman, the following

28  memorandum of points and authorities, and the file in this case.

## Memorandum of Points and Authorities

### Introduction

Garcia claims that Defendants retaliated against him based on his conduct and influence as an inmate-advisory-council member. (Order 2.) Rather, Defendants issued a rules-violation report against Garcia because he failed to follow direct orders during an emergency situation. And when Garcia alleged staff misconduct, Defendants placed him in administrative segregation to preserve the integrity of the misconduct investigation. Later, Defendants transferred Garcia to another institution to avoid safety concerns based on a threat assessment completed by Sergeant Locke that indicated Locke felt threatened and intimidated by Garcia.

There was a legitimate penological interest for all actions Defendants took concerning Garcia. Defendants' conduct was guided by concern for institutional safety and compliance with title 15 of the California Code of Regulations. Further, Garcia has not shown that Defendants' alleged actions chilled his protected activities or that he was harmed in any way.

### Statement of the Issues

Defendants' motion presents the following issues:

1. Garcia cannot prove retaliation unless the evidence shows that Defendants took adverse action against him because of his protected conduct and as a result, his First Amendment rights were chilled. Further, Garcia must show that Defendants' action did not reasonably advance a legitimate correctional goal. Here, Defendants issued Garcia a rules-violation report for failing to follow direct orders during an emergency situation, and placed Garcia in administrative segregation pending an investigation into his allegations of staff-misconduct, as is required by title 15 of the California Code Regulations. Defendants later transferred Garcia to another correctional institution based on safety concerns. Are Defendants entitled to summary judgment on the retaliation claims?

2. Defendants are entitled to qualified immunity if a reasonable officer in their position could have believed that the actions concerning Garcia had legitimate bases. Here

Defs.' Not. Mot. & Mot. Summ. J.    *J. G. Garcia v. B. Curry, et al.*
C 07-6262 CRB (PR)

2

1    Defendants closely followed prison procedures by giving Garcia a rules-violation when

2    he refused to follow directions during an emergency and housed Garcia in a manner

3    that protected Garcia's safety and the integrity of an investigation.  Are the moving

4    Defendants entitled to qualified immunity?

5    **Statement of the Case**

6    Plaintiff James Garcia is a pro-se former state inmate who filed this complaint under 42

7    U.S.C. § 1983 while incarcerated at Correctional Training Facility (CTF).  (Order Serv. 1, April

8    18, 2008.)  Under 28 U.S.C. § 1915A, this Court screened Garcia's complaint and found

9    cognizable claims for use of excessive force against Sergeant L.S. Locke, and retaliation against

10   Locke, Khan, Tucker, McCall, Barker, Roberts, and Curry.  The Court ordered service of

11   Garcia's excessive-force and retaliation claims on defendants Khan, Tucker, McCall, Barker,

12   Roberts, and Curry.  (Order Serv. 3)  The Court also ordered service on Sergeant Locke.  (*Id.*)

13   Garcia seeks a declaration that his rights have been violated and damages.

14   Service has not been effected as to Sergeant Locke.  (*See* Ct. Docket.)  Defendants therefore

15   do not address the excessive-force claim against Sergeant Locke.  Defendants address Garcia's

16   claims that they violated his First Amendment rights by retaliating against him for his conduct

17   and influence as an inmate-advisory-council member.  (Order Serv. 2.)

18   **Statement of Undisputed Facts**

19   **A.    The Parties.**

20   1.    Garcia is a state inmate currently housed at Ironwood State Prison.  During the events

21   at issue in the complaint, Garcia was housed at CTF.  (Compl. ¶ 1.)

22   2.    Defendant Khan is a Correctional Lieutenant who served as the Senior Hearing Officer

23   in CTF North Facility.  (Compl. 4.)

24   3.    Defendant Tucker was a Facility Captain at CTF.  (*Id.*)

25   4.    Defendant Roberts was a Custody Captain at CTF.  (*Id.*)

26   5.    Defendant Barker was the Chief Deputy Warden at CTF.  (*Id.* 3.)

27   6.    Defendant Curry was the Acting Warden at CTF.  (*Id.*)

28   7.    Defendant McCall was a Correctional Lieutenant and Unit V Senior Hearing Officer at

Defs.' Not. Mot. & Mot. Summ. J.                               *J. G. Garcia v. B. Curry, et al.*
                                                                C 07-6262 CRB (PR)

1  CTF. (*Id. 5.*)

2  **B.    Garcia violated prison rules by refusing to comply with direct orders to prone-out**
   **during an emergency.**

3

4      8.    On September 29, 2006, an announcement transmitted by the public announcement

5  system instructed all inmates on A-Yard to prone-out, or lay flat on the ground. (Compl. Ex. D.

6  at 9). All inmates on the yard except Garcia responded by getting in a prone position. (Decl. L.

7  Korman Supp. Defs.' Mot. Summ. J. (Korman Decl.) Ex. B.)  Garcia twice refused direct orders

8  from Correctional Officer Gomez to assume a prone position. (*Id.*)  Officer Gomez indicated

9  that he contacted Sergeant Locke and informed him of Garcia's serious disruption of facility

10 operations, and acts of disobedience and disrespect. (*Id.*)

11      9.    Correctional Officer Gomez reported the incident on a rules violation report, log no.

12 09-06-044. (*Id.*)  Officer Gomez's written report does not mention Garcia's membership on the

13 inmate advisory council, known as the Men's Advisory Council (MAC), but focuses on the

14 events of September 29, 2006.

15      10.   The next day, September 30, 2006, Garcia was summoned to report to the Unit V

16 Lieutenant's Office. (Compl. Ex. E at 36-8.)  When Garcia arrived, Sergeant Locke attempted to

17 explain to him his responsibilities as a MAC member during alarm activation and stressed the

18 responsibility of an elected member of the MAC. (*Id.* at 38)  Sergeant Locke informed Garcia

19 that his conduct placed himself and others in danger by his failure to assume a prone position.

20 (*Id.*)  According to Sergeant Locke, Garcia was unreceptive to counseling and became upset,

21 arguing with Sergeant Locke and stating that he would file a citizen's complaint. (*Id.*)  Sergeant

22 Locke reported that it seemed Garcia was trying to intimidate him and keep him from continuing

23 disciplinary actions against Garcia because of his position on the MAC. (*Id.*)

24      11.   On October 10, 2006, Defendant Khan conducted a hearing for rules violation report

25 log no. 09-06-044. (Korman Decl. Ex. B.) During this hearing, Defendant Khan asked Garcia a

26 series of questions, including whether Garcia assumed a prone position during the alarm and

27 whether Garcia saw other inmates on the yard in prone position. (*Id.*)  Defendant Khan also

28 asked Garcia if he was aware of inmate responsibilities during alarm responses for CTF yard.

Defs.' Not. Mot. & Mot. Summ. J.                                    *J. G. Garcia v. B. Curry, et al.*
                                                                      C 07-6262 CRB (PR)

4

1    (*Id.*) Defendant Khan's written report of the hearing and the rules violation report does not

2    mention Garcia's status as a MAC member. (*Id.*)

3       12.   On October 10, 2006, Garcia was found guilty of violating title 15, section 3005(b) of

4    the California Code of Regulations, for refusing to prone out during an emergency. (*Id.*) The

5    circumstances of this report were deemed serious, meaning that Garcia's conduct was a serious

6    disruption to facility operations and created a potential for mass disruptive conduct. (*Id.; see*

7    Cal. Code Regs., tit. 15 § 3315 (3)(H).)

8       13.   On November 7, 2006, Defendant McCall found Garcia guilty of violating California

9    Code of Regulations, title 15, section 2005 (a), Conduct Which Could Lead to Disorder.

10    (Compl. Ex. E at 42, rules violation report log no. 09-06-047.) There was a separate hearing on

11    November 7, 2006 for this rules violation report. (*Id.* at 42.) Defendant McCall found Garcia

12    guilty based on both Sergeant Locke's report of the discussion on September 30, 2006 between

13    himself and Garcia, and Garcia's admission that he debated with Sergeant Locke. (*Id.* at 43.) In

14    this rules violation report, Defendant McCall reported that Garcia had a responsibility to work

15    with line staff to relay information to the inmate population, especially involving any type of

16    emergency. (*Id.* at 44.) Defendant McCall wrote that as an elected member of MAC, Garcia is

17    held to a higher standard and cannot choose when to act as an individual and when to be held

18    accountable as an elected MAC member. (*Id.*)

19       14.   But later that same day, Defendant McCall decided to reduce rules violation report, log

20    no. 09-06-047, to a CDCR 128-B information chrono, to be placed in Garcia's C File regarding

21    actions taken while an elected member of the Men's Advisory Committee. (*Id.* at 31.) The

22    rules-violation report was removed from Garcia's central file because Defendant McCall

23    considered the evidence Garcia presented at the hearing and decided, based on a preponderance

24    of the evidence, that the rules-violation report should be reduced to an information chrono. (*Id.*

25    at 32.)

26

**C.   Garcia was placed in administrative segregation pending the outcome of his staff-**

27       **misconduct allegation against Sergeant Locke.**

28       15.   On October 3, 2006, Garcia submitted inmate appeal log no. 06-03323, alleging

1  excessive force against Sergeant Locke for the incident on September 29, 2006 during which

2  Garcia refused to prone out. (Compl. Ex. D at 9-17.) This appeal was processed as a staff

3  complaint. (*Id.*)

4      16. On October 20, 2006, Defendant Khan issued Garcia a CDCR 114-D administrative

5  segregation placement notice. (Compl. Ex. H at 63.) Garcia's placement on administrative

6  segregation status was because he alleged staff misconduct by Sergeant Locke. (*Id.*) The notice

7  stated that Garcia's continued presence at CTF-North may jeopardize the integrity of the

8  investigation, and Garcia was to be retained on administrative segregation status pending the

9  outcome of the investigation into the matter. (*Id.*)

10     17. Title 15, section 3335(a) of the California Code Regulations requires that an inmate be

11  removed from general population and placed in administrative segregation when that inmate's

12  presence in an institution's general inmate population jeopardizes the integrity of an investigation

13  of an alleged serious misconduct or criminal activity.

14     18. On October 26, 2006, Garcia appeared before the Institutional Classification

15  Committee for his initial administrative-segregation-placement review. (Compl. Ex. H at 60).

16  Defendant Barker was the chairperson of this review. (*Id.*) The CDCR 128-G classification

17  chrono indicates that Garcia was to be retained in administrative segregation while officials

18  investigated his allegations of staff misconduct. (*Id.*) Garcia was kept in administrative

19  segregation because his presence in the general population jeopardized the integrity of the

20  investigation into alleged serious misconduct. (*Id.*)

21

22  **D.  Sergeant Locke requested that Garcia be transferred to another California State
     Correctional Facility to avoid further intimidation by Garcia.**

23     19. On October 23, 2006, Garcia submitted inmate appeal no. 06-03639, alleging that his

24  placement in administrative segregation on October 20, 2006 was unwarranted and in retaliation

25  for filing an appeal. (*Id.* at 58.) Garcia received both a second-level response and a final,

26  director's level response to this appeal. (*Id.* at 56-7, 61-2.)

27     20. On December 14, 2006, Garcia appeared before the CTF administrative-segregation-

28  unit Institutional Classification Committee for his program review. (*Id.* at 66.) The committee

Defs.' Not. Mot. & Mot. Summ. J.                                          *J. G. Garcia v. B. Curry, et al.*
                                                                          C 07-6262 CRB (PR)

1   documented this hearing on a CDCR 128-G classification chrono. (*Id.*) Sergeant Locke had

2   requested that Garcia be transferred in order to avoid intimidation by Garcia in an effort to

3   prevent Locke from filing disciplinary actions against Garcia. (*Id.* at 66, 31.) Garcia stated to the

4   committee that he felt there would be further confrontations with Locke. (*Id.*) The

5   Administrative Segregation Institutional Classification Committee reviewed the entirety of

6   Garcia's file and concluded that in order to avoid safety concerns a confrontation might pose for

7   Sergeant Locke and Garcia, the Committee elected to transfer Garcia to another institution. (*Id.*

8   at 66.)

9       21.    On January 2, 2007, Defendant Curry responded to appeal no. 06-03639 on a second-

10   level reviewer's supplemental response. (*Id.* at 61-2.) This response indicates that Garcia's

11   allegations against Sergeant Locke were unsubstantiated. (*Id.* 61.) Further, the response

12   indicates that the unit facility captain, Defendant Roberts, submitted a threat assessment

13   concerning Garcia's presence at CTF. (*Id.*) Defendant Curry concurred with Defendant Roberts

14   that Garcia should be transferred. (*Id.*) The transfer was considered by Defendants Robert and

15   Curry after Sergeant Locke submitted an informational chrono stating that he felt threatened by

16   Garcia being housed at CTF and requested that Garcia be transferred to an alternate institution.

17   (*Id.*) Garcia was to remain in administrative segregation pending endorsement and transfer to

18   another institution. (*Id.*) This response clearly stated that Garcia's transfer was based on the fact

19   that Sergeant Locke felt threatened by Garcia's presence at CTF and that the transfer was to

20   maintain the safety of staff and the security of the institution. (*Id.*)

21

22   **Summary Judgment Standard**

23       Summary judgment may be granted only when there is no genuine issue of material fact and

24   the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are

25   those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

26   248 (1986). The movant bears the initial burden of identifying those portions of the pleadings,

27   discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

28   *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the movant meets its initial burden,

Defs.' Not. Mot. & Mot. Summ. J.                              *J. G. Garcia v. B. Curry, et al.*
                                                              C 07-6262 CRB (PR)

1  entry of summary judgment is mandated where the nonmoving party fails to "set forth specific

2  facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  There is no triable

3  issue of fact unless there is sufficient evidence favoring the nonmoving party for a jury to return a

4  verdict for that party. *Anderson,* 477 U.S. at 249.  All reasonable inferences must be drawn in

5  favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

6  587 (1986).  But if the nonmoving party's version of facts is "blatantly contradicted by the

7  record, so that no reasonable jury could believe it, a court should not adopt that version of the

8  facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 127 S. Ct.

9  1769, 1776 (2007).

## Argument

### I.

### The undisputed evidence shows that the retaliation claims are unfounded and barred as a matter of law.

Garcia bears the burden to set forth facts that satisfy each element necessary for a

prima-facie case of retaliation. *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995).  An inmate

must demonstrate five elements to establish a successful retaliation claim: (1) that a state actor

took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,

and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the

action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d

559, 568 (9th Cir. 2005).  These elements are not present in this case, and defendants Tucker,

Curry, Khan, McCall, Roberts, and Barker are each entitled to summary judgment on the

retaliation claims.

Retaliation claims brought by prisoners must be evaluated in light of concerns over

"excessive judicial involvement in day-to-day prison management, which 'often squander[s]

judicial resources with little offsetting benefit to anyone.'" *Pratt,* 65 F.3d at 807 (quoting *Sandin

v. Conner,* 515 U.S. 472, 482 (1995)).  In particular, courts should "'afford appropriate deference

and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for

conduct alleged to be retaliatory." *Id.* (quoting *Sandin,* 515 U.S. at 482).

Defs.' Not. Mot. & Mot. Summ. J.                                    *J. G. Garcia v. B. Curry, et al.*
C 07-6262 CRB (PR)

8

1  **A.    Garcia's placement in administrative segregation was necessary for the integrity of the**
   **investigation into his allegations of staff misconduct in accordance with California**
2  **Code Regulations and not done for retaliatory purposes.**

3      Garcia alleges Defendants Khan and Tucker responded to his inmate appeal by placing him

4  in administrative segregation. In fact, Garcia's placement in administrative segregation was

5  mandated by prison rules and regulations. In inmate appeal no. 06-03323, Garcia alleged

6  unnecessary use of force by Sergeant Locke during the incident on September 29, 2006. (Compl.

7  Ex. D at 9.) As a result, a staff-misconduct inquiry was conducted. (*Id.* at 12.) Garcia alleges

8  that Defendant Khan's order placing Garcia in administrative segregation was unwarranted and

9  in retaliation for exercising his First Amendment right to file a grievance. (*Id.* Ex. H at 58.) But

10  requiring that inmates be transferred to administrative segregation pending an investigation into

11  allegations of staff misconduct comports with statewide regulations. Title 15, section 3335(a) of

12  the California Code Regulations requires that an inmate be removed from general population and

13  placed in administrative segregation when that inmate's presence in an institution's general

14  inmate population jeopardizes the integrity of an investigation of an alleged serious misconduct

15  or criminal activity. And thus, these regulations serve a legitimate penological purpose. *See*

16  *Hewitt v. Helms,* 459 U.S. 460, 473 (1983) (stating that the isolation of a prisoner in

17  administrative segregation due to a pending investigation can serve important institutional

18  interests including the insulation of possible witnesses from coercion or harm).

19      Garcia's placement in administrative segregation ensured the integrity of the investigation

20  of alleged serious misconduct. (*See* CDCR 114-D, Compl. Ex. H. at 63 (administrative

21  segregation placement order).) The decision to move Garcia was not based on any retaliatory

22  motive by Defendant Khan. In fact, Defendant Khan followed rules and regulations, advancing

23  legitimate penological interests, including maintenance of order in the prison and institutional

24  safety. *See Procunier v. Martinez,* 416 U.S. 396, 412 (1974). There was no discretion on the

25  part of Defendant Khan: the rules require that all inmates be transferred to administrative

26  segregation if their presence jeopardizes the investigation. *See* Cal. Code. Regs., tit. 15 §

27  3335(a). *Hartman v. Moore,* 547 U.S. 250, 260 (2006) states that retaliatory motive must have

28  been the but-for cause for the adverse action at issue, or the retaliation claim fails. Here,

Defs.' Not. Mot. & Mot. Summ. J.                                    *J. G. Garcia v. B. Curry, et al.*
C 07-6262 CRB (PR)

9

1   retaliatory motive could not have been the but-for cause because the rules required the

2   Defendants' action regardless of their motive.  Because Garcia was placed into administrative

3   segregation pending an investigation into staff misconduct, Defendant Khan is entitled to

4   summary judgment.

5        Further, Defendant Tucker is entitled to summary judgment because Garcia has not

6   shown that he directly participated in the alleged adverse action of transferring Garcia to

7   administrative segregation.  Garcia alleges that Defendant Tucker signed Defendant Khan's order

8   placing Garcia in administrative segregation.  (Compl. 5 ¶ 5.)  But Defendant Tucker's signature

9   does not appear on Garcia's referenced exhibit.  (*Id.* Ex. G. at 54.)  And because "liability under

10  section 1983 arises only upon a showing of personal participation by the defendant," Defendant

11  Tucker is not liable for retaliation under § 1983.  *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.

12  1989).  Defendant Tucker has not personally participated in Defendant Khan's alleged retaliatory

13  action.

14  **B.    The rules-violation report for Garcia's refusal to prone-out advanced the legitimate**
         **penological purpose of institutional safety, and there is no evidence of retaliatory**
15       **motive.**

16       Garcia contends that Defendant Khan and Sergeant Locke wrote a false rules-violation

17  report against him in retaliation for his conduct and influence as a member of the inmate advisory

18  council.  (Order 2.)  This allegation has no evidentiary support.  Correctional Officer Gomez

19  reported the September 29, 2006 incident during which Garcia refused to prone out on a rules-

20  violation report, log no. 06-09-044.  (Korman Decl. Ex. B.)  Garcia has not shown that his

21  influence or membership in the inmate-advisory council were at issue or even mentioned in rules

22  violation report log no. 09-06-044.  Officer Gomez did not refer to Garcia's status as a MAC

23  member in his report.  (*See id.*)  During the hearing on this rules violation, Defendant Khan

24  simply asked Garcia if he assumed a prone position, if he saw other inmates assume a prone

25  position, and if he was aware of the requirement that all inmates prone-out.  (*Id.*)  These

26  questions do not reference Garcia's status as a MAC member.  There is no evidence that the

27  issuance of the rules-violation report was in retaliation for Garcia's conduct or influence as a

28  MAC member.

1    Instead, the issuance of the rules-violation report for refusing to prone out on September

2    29, 2006 was proper.  Garcia refused a direct order and as a result, was properly issued a rules-

3    violation report.  This report was issued because of Garcia's refusal to prone out and not for any

4    retaliatory purpose.  Defendant Khan is therefore entitled to summary judgment because there

5    was no retaliatory action.

6    **C.    The informational chrono based on actions taken while Garcia was an elected MAC**
     **member was proper and did not violate Garcia's First Amendment rights.**

7

8    Garcia alleges that Defendant McCall found him guilty of conduct that could lead to

9    disorder.  In fact, on November 7, 2006, Defendant McCall *initially* found Garcia guilty of

10   violating California Code of Regulations, title 15, section 2005 (a), Conduct Which Could Lead

11   to Disorder.  (Compl. 42.)  But on the same date, Defendant McCall reduced this rules-violation

12   report to an administrative-level offense, and then further, to an informative chrono, or CDCR

13   128-B form.  (*Id.* Ex. E at 31.)  After re-consideration of all evidence presented at the hearing,

14   Defendant McCall felt it proper to reduce the rules-violation report.  (*Id.* at 35.)

15   Defendant McCall did not draft the informational chrono, but instead included Sergeant

16   Locke's description of Garcia's behavior during their conversation on September 30, 2006.  (*Id.*)

17   In his description, Sergeant Lock attempted to explain to Garcia the importance of inmate

18   responsibilities during alarm activation.  (*Id.* at 42.)  According to Sergeant Locke, Garcia was

19   unreceptive to counseling and argued with Sergeant Locke.  (*Id.*)

20   The purpose of documenting Garcia's conduct during the meeting was to record Garcia's

21   minor misconduct.  (*Id.* at 61.)  Defendant McCall's responsibility as a Lieutenant and Senior

22   Hearing Officer includes documenting incidents such as the meeting between Sergeant Locke

23   and Garcia.  (*Id.* at 42.)  Defendant McCall was not retaliating against Garcia.  Instead, he found

24   that based on a preponderance of the evidence at the hearing for the rules-violation report, the

25   rules-violation should be reduced to an informative chrono.  (*Id.* at 35.)  Garcia received no loss

26   of credits and no loss of privileges.  (*Id.* at 31.)  As such, Defendant McCall's reduction of the

27   rules violation report regarding the conversation with Sergeant Locke on September 30, 2006 and

28   issuance of a CDCR 128-B chrono was in furtherance of a legitimate penological interest.

Defs.' Not. Mot. & Mot. Summ. J.                                    *J. G. Garcia v. B. Curry, et al.*
                                                                    C 07-6262 CRB (PR)

1    **D.    Garcia's transfer to Ironwood Prison was for legitimate penological purposes and**
          **did not violate his First Amendment rights.**

2

3          Garcia broadly alleges that he was transferred to another institution for retaliatory

4    motives.  But he provides no evidence that he was transferred to another institution because of

5    his conduct or influence as a MAC member, or because of filing inmate grievances.  He only

6    alleges that he was summoned to a hearing and informed of his pending transfer, and then later,

7    he was transferred.  (Compl. Claim 2.)  In fact, the evidence demonstrates that Garcia's transfer

8    was the culmination of Sergeant Locke's threat assessment concerning Garcia's attempts to

9    intimidate Locke, the need to ensure institutional safety, and Garcia's own admission that there

10   would be further confrontations with Sergeant Locke.  (*Id.* at 61.)  The documentation of the

11   transfer process demonstrates that the move was done in furtherance of legitimate penological

12   purposes, specifically, institutional safety.

13          Correctional staff have a legitimate penological interest in maintaining institutional

14   security at the prison.  *Schroeder v. McDonald,* 55 F.2d 454, 461-62 (9th Cir. 1995).  This

15   includes transferring a prisoner to another institution if appropriate.  *Id.*  Here, Sergeant Locke

16   felt so threatened by Garcia that he completed a threat assessment.  Sergeant Locke wanted to

17   avoid further intimidation by Garcia.  (*Id., Compl.* Ex. I at 66.)  Garcia acknowledged further

18   confrontations with Sergeant Locke.  (*Id.*)  And Garcia's transfer was recommended solely

19   because Garcia posed a threat to the safety of staff and the security of the institution.  (Compl.

20   Ex. H at 61.)  The Administrative Segregation Institutional Classification Committee reviewed

21   the entirety of Garcia's file and concluded that in order to avoid safety concerns a confrontation

22   might pose for Sergeant Locke and Garcia,  Garcia should be transferred to another institution.

23   (*Id.* at 66.)

24          On October 23, 2006, Garcia submitted inmate appeal no. 06-03639, alleging that his

25   placement in administrative segregation on October 20, 2006 was unwarranted and in retaliation

26   for filing an appeal.  (*Id.* at 58.)  Garcia had been placed in administrative segregation on October

27   10, 2006 for protection of the integrity of the investigation of alleged staff misconduct against

28   Sergeant Locke.  The responses to Garcia's inmate appeal demonstrate that Garcia's transfer was

Defs.' Not. Mot. & Mot. Summ. J.                                                                    *J. G. Garcia v. B. Curry, et al.*
                                                                                                      C 07-6262 CRB (PR)

12

1    necessary to maintain the safety of staff and the security of the institution and not for retaliatory

2    purposes. (*See id.* at 61-2.)

3        On December 14, 2006, Garcia appeared before CTF administrative segregation unit for

4    his program review. (*Id.* at 66.) The written documentation of the hearing, a CDCR 128-G form,

5    indicates that Sergeant Locke requested that Garcia be transferred to avoid further intimidation

6    by Garcia in an effort to prevent Locke from filing disciplinary actions against Garcia. (*Id.* at

7    31.) Garcia stated to the committee that he felt there would be further confrontations with Locke.

8    (*Id.* at 66) To avoid any safety concerns a confrontation might pose for the Locke and Garcia, the

9    committee elected to transfer Garcia to another level III institution. (*Id.*)

10        On January 2, 2007, Defendant Curry signed the second-level response to Garcia's

11    appeal no. 06-03639, indicating that Garcia's allegations against Sergeant Locke were

12    unsubstantiated. (*Id.* at 61.) Further, a threat assessment was completed by the unit facility

13    captain, Defendant Roberts, and the associate warden, Defendant Curry, who concurred that

14    Garcia should be transferred. (*Id.*)  These high-ranking individuals considered a transfer after

15    Sergeant Locke submitted an informational chrono stating that he felt threatened by Garcia being

16    housed at CTF and requested that Garcia be transferred to an alternate institution. (*Id.*)

17    According to Defendants' response to the appeal, Garcia's transfer is based on the fact that

18    Sergeant Locke felt threatened by Garcia's presence at CTF because Garcia was trying to

19    intimidate him and prevent Locke from filing disciplinary actions against him. (*Id.* at 61.) The

20    response also explains that the transfer is to maintain the safety of staff and the security of the

21    institution. (*Id.*) Garcia was to remain in administrative segregation pending endorsement and

22    transfer to another institution. (*Id.*)

23    **E.    Garcia has not shown that Defendants' alleged actions chilled his protected**
     **activities or that he was harmed in any way.**
24

25        Garcia has provided no admissible evidence showing that Defendants' actions chilled his

26    First Amendment rights. *See Rhodes,* 408 F.3d at 567-68 & n.11.  "[A] retaliation claim may

27    assert an injury no more tangible than a chilling effect on First Amendment rights," but "without

28    alleging a chilling effect, a retaliation claim without allegation of other harm is not actionable."

Defs.' Not. Mot. & Mot. Summ. J.                                    *J. G. Garcia v. B. Curry, et al.*
C 07-6262 CRB (PR)

13

1   *Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir. 2001); *see also Resnick v. Hayes*, 213 F.3d 443,

2   449 (9th Cir. 2000) (holding that a retaliation claim must allege that the Plaintiff's First

3   Amendment rights have been infringed or chilled).

4         A chilling effect exists when an official's act "would chill or silence a person of ordinary

5   firmness from future First Amendment activities." *Mendocino Environmental Center v.*

6   *Mendocino County,* 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Crawford-El v. Britton,* 93

7   F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds,* 520 U.S. 1273 (1997)).  Garcia

8   alleges that Defendants placed him in administrative segregation, wrote a false rules-violation

9   report, and transferred him to another institution.  But his First Amendment activity was not

10  chilled.  Garcia filed an appeal three days after his placement in administrative segregation.  (*See*

11  Compl. Ex. H at 58, inmate appeal no. 06-03639.)  He also filed an appeal after Defendant

12  McCall reduced his rules-violation report of November 7, 2006 to a CDCR 128-B.  (Compl. Ex.

13  E at 27, inmate appeal no. 06-03995.)  And months later, after his transfer from CTF, Garcia

14  filed a Tort Claim with the California Victim Compensation and Government Claims Board.

15  (Compl. Ex. J at 69-73.)

16         Garcia also fails to provide admissible evidence of harm as a result of the alleged

17  retaliatory acts that would be sufficient to show a "chilling effect." *See Rhodes*, 408 F.3d at 568,

18  n. 11.  Garcia does not reference any specific motion or lawsuit that he failed to file or was

19  unable to file because of Defendants' actions.  Since Garcia cannot provide evidence of harm

20  resulting from Defendants' alleged adverse actions, Defendants are entitled to summary

21  judgment against his retaliation claims for placement in administrative segregation, issuance of a

22  "false" rules-violation report, and transfer to another institution.

23                                              **II.**

24              **Defendants are shielded from any potential damages**
            **liability by the doctrine of qualified immunity.**

25

26         Summary judgment is proper in this case because Defendants are entitled to qualified

27  immunity.  Governmental officials are entitled to qualified immunity from liability from civil

28  damages if their conduct does not violate "clearly established statutory or constitutional rights of

1  which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

2  Qualified immunity "provides ample protection to all but the plainly incompetent or those who

3  knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991) (citations omitted).

4      In determining whether a governmental official is entitled to qualified immunity, the

5  Supreme Court set out a sequence of queries to be considered. *Saucier v. Katz*, 533 U.S. 194

6  (2001). The *Saucier* Court explained that an official is entitled to qualified immunity unless:  (1)

7  the plaintiff alleged facts that show a constitutional violation, and (2) it was clearly established,

8  at the time, that the conduct was unconstitutional. *Saucier*, 533 U.S. at 201. This inquiry "must

9  be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

10      As discussed above, the evidence demonstrates that Garcia's constitutional rights have

11  not been violated by Defendants. Garcia has not alleged harm resulting from his placement in

12  administrative segregation, or his transfer to another facility. Nevertheless, even if the Court

13  were to determine that further clarification of the law is necessary, and that Defendants' conduct

14  did violate the Constitution, it was not clearly established at the time that Defendants acted that

15  their conduct was unlawful.

16      Defendants followed prison regulations that served legitimate penological purposes when

17  they placed Garcia in administrative segregation pending the outcome of his allegation of staff

18  misconduct. *See Hewitt*, 459 U.S. at 473. They were also following prison regulations when they

19  transferred him to another institution.  All of these actions were done in furtherance of

20  maintaining institutional safety, and not in retaliation for Garcia's conduct or influence as a MAC

21  member, or filing inmate appeals. A reasonable official in Defendants' position could have

22  believed that the actions concerning Garcia were based on legitimate bases and did not violate

23  clearly established law. *See Marquez v. Gutierrez,* 322 F.3d 689, 692-93 (9th Cir. 2005)

24  (explaining that qualified immunity is not defeated simply because there is a dispute about the

25  defendants' motives and examining whether qualified immunity applies by looking at the actions

26  at issue through the perspective of a reasonable officer). Thus, Defendants are entitled to

27  qualified immunity.

28  ///

Defs.' Not. Mot. & Mot. Summ. J.    *J. G. Garcia v. B. Curry, et al.*
C 07-6262 CRB (PR)

15

1

## Conclusion

2         For the foregoing reasons, Defendants A. Tucker, B. Curry, V. Khan, D. N. McCall, A. E.

3    Roberts, and P. Barker respectfully request that the Court grant them summary judgment because

4    the undisputed evidence demonstrates that they are entitled to judgement as a matter of law.

5

6         Dated:  September 2, 2008

7

8                              Respectfully submitted,

9                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

10                             DAVID S. CHANEY
                               Chief Assistant Attorney General

11
                               ROCHELLE C. EAST
12                             Senior Assistant Attorney General

13                             THOMAS S. PATTERSON
                               Supervising Deputy Attorney General

14

15

16

17                             LILY A. KORMAN
                               Deputy Attorney General
                               Attorneys for Defendants A. Tucker, B. Curry, V. Khan, D. N.
18                             McCall, A. E. Roberts, and P. Barker

19

20   20133601_1.wpd
     SF2008401837

21

22

23

24

25

26

27

28

Defs.' Not. Mot. & Mot. Summ. J.                          *J. G. Garcia v. B. Curry, et al.*
                                                          C 07-6262 CRB (PR)